UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BARBARA SMITH and
LINDA TROUPE,

        Plaintiffs,

vs.

Case No. 06-CV-10767
HON. GEORGE CARAM STEEH

PROVIDENT CONSUMER
FINANCIAL SERVICES and
LITTON LOAN SERVICING, LP,

        Defendants.

_____/

ORDER GRANTING DEFENDANT LITTON'S
MOTION TO DISMISS (#11), GRANTING DEFENDANT PROVIDENT'S MOTION
TO DISMISS/SUMMARY JUDGMENT (#4), AND
DISMISSING PLAINTIFFS' CLAIMS

    Defendants Litton Loan Servicing, LP ("Litton") and Provident Consumer Financial Services ("PCFS") move separately to dismiss pro se plaintiffs Barbara Smith's and Linda Troupe's claims for relief under the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 41 et seq., the Fair Debt Collections Practices Act ("FDCPA"), 15 U.S.C. § 1692 et seq., the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 et seq., and the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2603 et seq.. The facts and legal arguments presented in the parties' briefs are sufficient to adjudicate the motion. Oral argument would not significantly aid the decisional process. Pursuant to E.D. Mich. Local R. 7.1(e)(2), it is ORDERED that the motions be resolved without oral argument.

## I. Background

    Plaintiffs filed a federal complaint on February 21, 2006 alleging that non-party Capstone Mortgage Corporation assigned the plaintiffs' $32,000.00 mortgage to defendant

PCFS on March 6, 2000, and that PCFS foreclosed on the mortgaged property at a March 24, 2004 public sale for $37,079.14. Plaintiffs allege a $39,482.00 mortgage-debt following foreclosure included 12.4% annual interest that accrued during the six-month redemption period. Plaintiffs allege non-party National City Bank acquired PCFS on July 1, 2004, and sold the mortgage servicing rights to defendant Litton in December 2004.

PCFS and Litton allegedly provide and service high-risk mortgages to lower-income borrowers such as the plaintiffs. Plaintiffs allege PCFS and Litton require borrowers to "force purchase" insurance if a borrower's own insurance lapses, adding "advances" to mortgage accounts at rates higher than charged by insurance companies. Plaintiffs allege PCFS and Litton also charge late fees and penalty interest for timely mortgage payments that PCFS and Litton themselves fail to timely post. Plaintiffs allege PCFS and Litton also debit "bogus" fees to any mortgage account found to be "delinquent," and apply mortgage payments to pay off these fees before paying down the principal and interest of the mortgage debt. Plaintiffs allege PCFS and Litton also charge multiple late fees for a single payment delinquency, and continue to assess late fees and insurance premiums against a mortgage debt after a loan has been accelerated.

Plaintiffs further allege that PCFS and Litton continued to assess additional charges and fees against their mortgage debt after the debt had been accelerated in January 2004. Plaintiffs allege that PCFS and Litton twice "force purchased" insurance for their property knowing that the mortgaged property was already insured, providing only a partial refund after being presented with proper proof of insurance. Plaintiffs essentially allege that PCFS's and Litton's improper practices caused the mortgage-loan to default, with PCFS wrongfully demanding $1,963.84 for past due mortgage payments owing from August 2003 through January 10, 2004 notwithstanding plaintiffs' proofs to the contrary. Plaintiffs allege it was not until they filed a state lawsuit that PCFS alleged that the mortgage-loan had

2

instead been defaulted for $1,761.41 in unpaid taxes. Plaintiffs allege PCFS "uses aggressive practices that threaten Plaintiff with continuing collection calls, a negative credit rating, additional fees, and even foreclosure, to obtain Plaintiff's agreement to forbearance agreements or other workout solutions that demanded 'the total amount due.'" Plaintiffs allege PCFS and Litton refused to investigate plaintiffs' documented evidence that full payment had been made, and instead proceeded with foreclosure.

In Count I, plaintiffs allege PCFS and Litton are liable under the FTCA for failing to timely and properly post plaintiffs' mortgage payments, and for thereafter wrongfully assessing late fees and other charges. Count II alleges PCFS and Litton are liable under the FTCA for assessing "forced purchase" casualty insurance on the mortgaged property when it was already insured, and failing to fully refund all overcharges and late fees. Count III alleges PCFS and Litton are liable under the FTCA for falsely representing that plaintiffs owed $1,963.84 for past due mortgage payments for August 2003 through January 10, 2004. Count IV alleges PCFS and Litton are liable under the FTCA for falsely, unfairly, and deceptively representing that fees were owed under the mortgage contract or as provided for by law. Counts V through VII allege liability under the FDCPA. Counts VIII through X allege liability under the FCRA. Count XI alleges liability under the RESPA. Both Litton and PCFS move to dismiss plaintiffs' claims, while PCFS also moves for summary judgment of the claims.

Federal Rule of Civil Procedure 12(b)(6) authorizes a court to dismiss a claim on an issue of law. "[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957). In considering a Rule 12(b)(6) motion, a court must "accept all of plaintiff's factual allegations as true and determine whether any set of facts consistent with the allegations would entitle

3

the plaintiff to relief." G.M. Eng'r and Assoc., Inc. v. West Bloomfield Tp., 922 F.2d 328, 330 (6th Cir. 1990).

## I. Defendant Litton

Litton moves to dismiss arguing it did not service the plaintiffs' mortgage and therefore cannot be held liable as a matter of law.  Plaintiffs allege in their complaint:

> 5.  On March 3, 1999, Defendant Provident Bank d/b/a PCFS Mortgage Resources, f/k/a PCFA Financial Services was assigned the mortgage, and recorded it on March 6, 2000 . . . made by JULIA A. TROUPE to Capstone Mortgage Corporation, mortgagee, dated February 26, 1999 . . . .
>
> 6.  That while holding said mortgage Defendant Provident Consumer Financial Services foreclosed on the Plaintiff's mortgage by a sale of the mortgage premises, at public venue . . . on March 25, 2004, for a sum of THIRTY-SEVEN THOUSAND SEVENTY-NINE AND 14/100 DOLLARS ($37,079.14) including interest at the rate of 12.4% per annum, after 6 month redemption period a sum of THIRTY-NINE THOUSAND FOUR HUNDRED EIGHTY-TWO AND 00/100 ($39,482.00)
>
> 7.  That effective July 1, 2004, National City Corporation ("NCC") acquired Provident [sic] Provident Bank d/b/a PCFS Mortgage Resources, f/k/a PCFA Financial Services.
>
> 8.  After National City acquired Provident, it made the decision to sell a portion of PCFS that included the mortgage agreement signed by Plaintiff JULIA A. TROUPE.
>
> 9.  As of Dec. 2004, Litton Loan Servicing ("Litton") LP has acquired the PCFS servicing operation and is responsible for managing and directing PCFS-related litigation.

Complaint, ¶¶ 5-9, at 2-3.

Accepting the plaintiffs' above pleaded facts as true, the redemption period on the mortgage expired on September 25, 2004, a little more than two months before defendant Litton first acquired defendant PCFS's mortgage servicing operation and the resulting responsibility of managing and directing defendant PCFS-related litigation.  See also M.C.L.

4

§ 600.3240(8) (providing for 6 month redemption period)[1]. All of the plaintiffs' factual allegations of wrongful conduct precede Litton's December 2004 acquisition date: alleged April 2002 assessment for a 1999 tax bill; alleged "forced purchase" insurance assessments in 2001, 2002, and 2003; assessed late fees in January through May 2004; untimely posting of mortgage payments in 2002 due to "bogus" tax escrow account; and falsely representing past due mortgage payments in January 2004 foreclosure notice. See Complaint, ¶¶ 15B, 18, 22, 33, at 4, 6, 7-9. Construing plaintiffs' complaint in a light most favorable to the plaintiffs, it is beyond doubt that the plaintiffs can prove no set of facts in support of their claims which would entitle then to relief against Litton because Litton did not service the mortgage during the time in question. Conley, 355 U.S. at 45-46; G.M. Eng'r, 922 F.2d at 330.

Plaintiffs' proffering of a January 8, 2005 motion filed by PCFS in the state court case, in which PCFS's Counsel represented that "[Litton] has acquired the PCFS servicing operation and is responsibility [sic] for managing and directing PCFS-related litigation," and a September 29, 2005 letter from Litton warning Troupe that information relating to closed mortgages stored on computer files had been stolen, is consistent with plaintiff's allegations that "[a]s of Dec. 2004, Litton Loan Servicing ("Litton") LP has acquired the PCFS servicing operation and is responsible for managing and directing PCFS-related litigation."

---

[1] Plaintiffs' would have lost the mortgage interest in the real property on September 25, 2004 when the redemption period expired, and before Litton began servicing PCFS mortgages in December 2004, unless plaintiffs redeemed the property. See Bankers Trust Co of Detroit v. Rose, 322 Mich. 256, 260; 33 NW2d 783 (1948) (holding that legal title vests in statutory foreclosure purchaser at expiration of redemption period); Detroit Fidelity & Surety Co v. Donaldson, 255 Mich. 129; 237 NW 380 (1931) (holding that mortgagor loses all interest in property at expiration of redemption period). Even if plaintiffs redeemed the property, as asserted by PCMS in their separate motion, plaintiffs have failed to allege wrongful conduct against Litton that occurred after Litton acquired PCFS mortgage servicing rights in December 2004. Plaintiffs maintain they lost the property following expiration of the redemption period.

Complaint, ¶¶ 9, at 3.  At best, plaintiffs' proffered evidence indicates that Litton was servicing PCFS mortgages and managing litigation relative to PCFS mortgages in January 2005.  The evidence fails to generate any doubt that Litton cannot be held liable for the alleged wrongful acts and omissions that occurred prior to December 2005.   Litton is entitled to dismissal of plaintiffs' claims as a matter of law.  Conley, 355 U.S. at 45-46; G.M. Eng'r, 922 F.2d at 330.

## II. Defendant PCFS

PCFS moves for dismissal or summary judgment of plaintiffs' claims arguing that plaintiffs filed a state lawsuit against PCFS on March 3, 2004, Troupe v. Provident Consumers Financial, Case No. 04-406441-CH, (Wayne Cty. Cir. Ct. 1994) challenging the propriety of the then pending foreclosure, that the trial court dismissed the lawsuit on June 7, 2005 on summary disposition, and that the dismissal was affirmed by the Michigan Court of Appeals in Troupe v. Provident Consumers Financial, No. 263285, 2005 WL 3335062, (Mich Ct. App. Dec. 8, 2005) (unpublished), lv denied, 474 Mich. 1130 (Apr. 28, 2006).  PCFS asserts plaintiffs' claims are thus barred by operation of the Rooker Feldman doctrine or res judicata.  PCFS further argues that plaintiff Smith must be dismissed from this lawsuit because she is not named on the subject mortgage, lacks privity with PCFS, and therefore cannot state a claim against PCFS.  Plaintiffs counter that res judicata does not bar their instant federal claims because these claims were not alleged in their state court complaint.  Plaintiffs maintain that res judicata bars only claims that were actually litigated.  Plaintiffs assert Smith is a proper party to this action because she lost her own share of equity in foreclosure.

The Rooker Feldman doctrine provides that federal district courts and intermediate appellate courts lack jurisdiction to review the final judgments of state courts.  Hutcherson v. Lauderdale County, 326 F.3d 747, 754 (6th Cir. 2003).  In contrast, res judicata does not

deprive a federal court of jurisdiction, but instead requires federal courts to give state court judgments the same preclusive effect as would be given the judgment under the law of the state in which the judgment was rendered. Id.; Migra v. Warren City School District Bd. of Ed., 465 U.S. 75, 81 (1984). As a jurisdictional bar, the Rooker Feldman doctrine should be considered first. Hutcherson, 326 F.3d at 754.

### A. Rooker Feldman Doctrine

Determining whether to apply the Rooker Feldman doctrine involves a two-part analysis: (1) whether the federal claims are "inextricably intertwined" with the claims asserted in the prior state court proceeding, and; (2) whether the federal claims allege a specific grievance that the law was improperly applied, for which the Rooker Feldman doctrine would apply, as opposed to a general constitutional challenge to the state law applied in the state action. Hutcherson, 326 F.3d at 755-56. A federal claim is "inextricably intertwined" with a state-court judgment "if the federal claim succeeds only to the extent that the state court wrongly decided the issues before it." Id. at 756 (quoting Catz v. Chalker, 142 F.3d 279, 293 (6th Cir. 1998). Stated differently, "[i]n practice this means that when granting relief on the federal claim would imply the state-court judgment on the other issues was incorrect, federal courts do not have jurisdiction." Gilbert v. Ferry, 298 F.Supp.2d 606, 613 (E.D. Mich. 2003) (quoting Pieper v. Am. Arbitration Ass'n, 336 F.3d 458, 460 (6th Cir. 2003)).

Plaintiffs' factual accusations in this lawsuit are limited to allegations that PCFS improperly foreclosed the subject mortgage by wrongfully inflating the amount due by charging for the "forced purchase" of insurance when it was not required, failing to fully refund proven overcharges for the "forced purchase" of insurance, failing to timely post mortgage payments and then charging late fees and penalty interest for "delinquent" payments, charging "bogus" fees, charging multiple late fees for a single payment

7

delinquency, improperly applying mortgage payments to pay off improperly assessed charges and fees instead of paying down the principal debt and interest, continuing to assess late fees and "forced purchase" insurance fees after the mortgage debt was accelerated, failing to investigate plaintiff's documented evidence that full payment had been made when PCFS demanded $1,963.84 for past due mortgage payments owing through January 10, 2004, and falsely asserting that the mortgage-loan was defaulted for $1,761.41 in unpaid taxes after plaintiffs filed their state lawsuit. In granting summary disposition of plaintiffs' state law claims, the state trial court held:

> Plaintiff was, in fact, past due on mortgage payments at the time of the notice of default and Defendant had the right under Michigan law and under the mortgage and note, to declare Plaintiff in default, foreclose on the property, and proceed with the sheriff's sale.

Troupe, Case No. 04-406441-CH, June 7, 2005 Opinion, at 3. In affirming summary disposition of the plaintiffs' state court claims, the Michigan Court of Appeals reasoned:

> In this case, defendant, as the moving party, presented documented evidence including a Loan Summary that indicated as of October and November 2003 payments were being applied to the August and September mortgage payment amounts, which were then past due. In addition to mortgage payments being two months in arrears, the Loan Summary showed that additional funds were being paid by defendant for escrow-related items such as insurance premiums and property taxes, which then also had to be paid for by sums received from plaintiffs.
>
> Plaintiffs presented documentary evidence of eight payments totaling $2,389.95 being made to defendant from July 2003 to January 2004. Those payments are not disputed by defendant. Despite the accounting for those payments, however, the documentary evidence from defendant, showing the history of the loan from its inception, continues to show that plaintiff Troupe was in default of the terms of the mortgage because monthly payments were not made in a timely manner.
>
> . . . . Plaintiffs did not provide any documentary evidence to suggest that the mortgage payments were current at the time they made the July 16, 2003 payment, which was the first payment amount supported by documentary evidence by plaintiffs. According to the Loan Summary provided by defendant, the monthly payments were at least one month past due at the time of plaintiff's July payment. The partial payment of $200.00 that was received on July 21, 2003, was combined with other funds being held to

8

> make a regular payment that was actually due on June 3, 2003.
>
> Following that date, mortgage payments became increasingly past due because of other obligations also owed under the terms of the mortgage. By October and November 2003 payments were applied to the mortgage payments due two months prior.
>
> Plaintiffs provided documentary evidence concerning payments only from July 2003 to January 2004. Plaintiffs did not, however, show either that the mortgage payments were up to date as of July 2003 or that all funds paid by plaintiffs were required to be applied only to mortgage payments. The trial court properly granted defendant's motion for summary disposition because plaintiffs did not present documentary evidence establishing the existence of a material factual dispute and because plaintiffs relied only on allegations and denials in the pleadings to assert that they had made all of the mortgage payments.

Troupe, 2005 WL 3335062 at *2.

Plaintiffs' instant claims captioned "Count I: Failure to Properly Post Plaintiff's Payments," "Count II: Unfair and Deceptive Forced Placing of Insurance," "Count III: Misrepresentation of Amounts Owed," and "Count IV: Unfair and Deceptive Assessment and Collection of Fees," and plaintiffs' conclusionary allegations in Counts VI through XI of knowingly and falsely representing an inaccurate amount of mortgage-debt owing, are "inextricably intertwined" with the state-court judgment because these claims can succeed only to the extent this court determines that the state court wrongly decided that PCFS "had the right under Michigan law and under the mortgage and note, to declare Plaintiff in default, foreclose on the property, and proceed on the sheriff's sale." Troupe, Case No. 04-406441-CH, June 7, 2005 Opinion, at 3. Hutcherson, 326 F.3d at 755-56. Plaintiffs' instant claims allege a specific grievance that the law was improperly applied in servicing and foreclosing on the mortgage. Id. Granting plaintiffs relief on their claims, now couched in terms of federal law, would necessarily imply that the Michigan courts incorrectly decided plaintiffs' state-lawsuit. Gilbert, 298 F.Supp.2d at 613. Consequently, pursuant to the Rooker Feldman doctrine, defendant PCFS is entitled to dismissal of plaintiffs' claims for

lack of federal subject matter jurisdiction. Hutcherson, 326 F.3d at 754.

## B. Res Judicata

Alternatively, and assuming for purposes of PCFS's motion only that this court enjoys federal question jurisdiction, plaintiffs' claims are barred by the doctrine of res judicata. The court is required to apply Michigan law in determining the preclusive effect of plaintiffs' state-court judgment.[2] Hutcherson, 326 F.3d at 754; Migra, 465 U.S. at 81. Under applicable Michigan law:

> . . . . Res judicata requires that (1) the prior action was decided on the merits, (2) the decree in the prior action was a final decision, (3) the matter contested in the second case was or could have been resolved in the first, and (4) both actions involved the same parties or their privies. Baraga Co. v. State Tax Comm., 466 Mich. 264, 269, 645 N.W.2d 13 (2002); Kosiel v. Arrow Liquors Corp., 446 Mich. 374, 379, 521 N.W.2d 531 (1994). Michigan law defines res judicata broadly to bar litigation in the second action not only of those claims actually litigated in the first action, but also claims arising out of the same transaction that the parties, exercising reasonable diligence, could have litigated but did not. Dart v. Dart, 460 Mich. 573, 586, 597 N.W.2d 82 (1999). In Pierson Sand & Gravel, Inc., supra at 380, 596 N.W.2d 153, quoting Hackley v. Hackley, 426 Mich. 582, 585, 395 N.W.2d 906 (1986), our Supreme Court stated that res judicata applies " 'to every point which properly belonged to the subject of litigation, and which the parties, exercising reasonable diligence, might have brought forward at the time.' " In addition, res judicata "bars relitigation of claims that are based on the same transaction or events as a prior suit." Ditmore v. Michalik, 244 Mich.App. 569, 577, 625 N.W.2d 462 (2001); see also Jones v. State Farm Mut. Automobile Ins. Co., 202 Mich.App. 393, 401, 509 N.W.2d 829 (1993). If the same facts or evidence would sustain both, the two actions are the same for the purpose of res judicata. Huggett v. Dep't. of Natural Resources., 232 Mich.App. 188, 197-198, 590 N.W.2d 747 (1998); In re Koernke Estate, 169 Mich.App. 397, 399, 425 N.W.2d 795 (1988).

Peterson Novelties, Inc. v. City of Berkley, 259 Mich. App. 1, 10-11, 672 N.W.2d 351 (2003). See also M.C.R. 2.203(A), requiring a Michigan plaintiff to "join every claim that the

---

[2] Plaintiffs' reliance on Aetna Life Ins. Co. v. Hartford, 108 F.2d 824 (8th Cir. 1940), Cunningham v. Oklahoma City, 110 P.2d 1102, 188 Okl. 466 (1941), and Lorber v. Vista Irr. Dist., 127 F.2d 628 (9th Cir. 1942) for the proposition that res judicata only bars claims actually litigated in the prior state-court lawsuit is misplaced as none of these cases apply Michigan law.

pleader has against that opposing party at the time of serving the pleading, if it arises out of the transaction or occurrence that is the subject matter of the action and does not require for its adjudication the presence of third parties over whom the court cannot acquire jurisdiction."

State courts enjoy concurrent jurisdiction to adjudicate claims filed under the FDCPA, the FCRA, and the RESPA. See respectively 15 U.S.C. §1692k(d), 15 U.S.C. § 1681p, and 12 U.S.C. § 2614. The FTCA provides no private cause of action. Sharwell v. Selva, 4 Fed.Appx. 226, 227 (6th Cir. Feb. 5, 2001) (unpublished) (citing Holloway v. Bristol-Myers Corp., 485 F.2d 986, 988 (D.C.Cir. 1973)). Plaintiffs' federal claims are barred by the doctrine of res judicata because they arise out of the same transaction and occurrence as their prior state court lawsuit, a final decision has been rendered in the state court action, plaintiffs' present claims could have been resolved in the state court action, and both actions involved plaintiffs and PCFS. Peterson Novelties, 259 Mich. App. at 10. PCFS is entitled to dismissal of plaintiffs' claims on application of the doctrine of res judicata. Id. at 10-11; Conley, 355 U.S. at 45-46; G.M. Eng'r, 922 F.2d at 330.

### III. Conclusion

Defendant Litton's motion to dismiss is hereby GRANTED. Defendant PCFS's motion to dismiss is also hereby GRANTED. Plaintiffs' claims are hereby DISMISSED in their entirety.

SO ORDERED.

s/George Caram Steeh
GEORGE CARAM STEEH
UNITED STATES DISTRICT JUDGE

Dated: July 17, 2006

CERTIFICATE OF SERVICE

Copies of this Order were served on the attorneys of record on July 17, 2006, by electronic and/or ordinary mail.

                                    s/Josephine Chaffee
                                    Secretary/Deputy Clerk